Jones, Chief Judge,
delivered the opinion of the court:
On July 5,1942, the defendant shipped several carloads of freight and passenger motor vehicles.over the lines of plaintiff and connecting carriers under Government bills of lading from Leesville, Louisiana, to Ansonville, North Carolina. The railroad cars involved in this dispute exceeded 50 feet 8 inches in length. The actual weight of the vehicles shipped per car ranged from 12,240 pounds to 17,380 pounds, and the shipments could have been loaded in cars of lesser length.
The real issue in the case is what minimum carload rates shall be paid on the cars that were actually used but which were not loaded to full capacity.
Defendant’s position is that the minimum weight should not exceed 12,500 pounds per car, while plaintiff argues that the applicable minimum weights are 20,000 pounds per car for passenger vehicles and 24,000 pounds per car for freight vehicles.
The rates, which are not in dispute, were set forth in Southwestern Lines’ Tariff No. 254r-A which, on its title page, provided that it was governed by Western Classification *550 No. 70 and Southwestern Lines’ Tariff No. 173-0. The minimum weights established by Buie 34 of Western Classification No. 70, which is contained in Consolidated Freight Classification No. 15, were 20,000 pounds for transporting passenger automobiles, and 24,000 pounds for transporting freight automobiles. Plaintiff contends that these are the applicable minimum weights, and both parties have agreed that' the freight charges should be computed on such minimum weights unless the provisions of Buie 34 of Western Classification No. 70 are inapplicable because of the language contained in item 9220 of Southwestern Lines’ Tariff No. 173-0.
Southwestern Lines’ Tariff No. 173-0, upon which defendant relies, contained exceptions to Western Classification No. 70, and item 9220 thereof stated that in lieu of the minimum weights contained in the Western Classification for freight and passenger automobiles, the applicable minimum weights should be 10,000 pounds when the vehicles are loaded in cars not exceeding 40 feet 7 inches in length, and 12,500 pounds when they are loaded in cars exceeding 40 feet 7 inches in length but not more than 50 feet 8 inches in length. No minimum weights were specified in these exceptions for cars of the size we are concerned with here, i. e., cars more than 50 feet 8 inches long, but it is defendant’s position that the exceptions tariff completely removed motor vehicles from the Western Classification and that 12,500 pounds, the highest minimum weight mentioned in item 9220, governs. It is to be noted that item 9240 of Southwestern Lines’ Tariff No. 173-0 provided for a minimum weight of 32,000 pounds on shipments of vermiculite when loaded in cars of more than 50 feet 6 inches long, but the record is silent as to why item 9220 of the same tariff specified no minimum weight for shipments of motor vehicles in cars that were more than 50 feet 8 inches long.
After reviewing the facts, which are not in dispute, and considering together all of the pertinent parts of the relevant tariffs, we conclude that the minimum weights specified in Buie 34 of Western Classification No. 70 are applicable to the disputed shipments.
*551 Defendant has correctly asserted that the function of an exceptions tariff is to remove articles from the classification, provided the shipments are clearly covered by the exception. Here the exceptions tariff relied upon by the defendant specified no minimum weights for the size of the cars used, whereas such minimum weights, were expressly provided for in Rule 34 of Western Classification No. 70. • Furthermore, the general provisions of Southwestern Lines’ Tariff No. 173-0 stated that the ratings contained therein were governed by the Western Classification “except as otherwise provided,” and that no provision in the classification should be construed to supersede any specific provision contained in the exceptions tariff. By reason of this rule, we are compelled to read the description in item 9220 of Tariff 173-0 in connection with the classification tariff and to hold that, since the exception does not set forth a specific minimum weight for the cars involved here, the vehicles remain subject to the minimum weight provision of Rule 34 of Western Classification No. 70.
The carriers applied the minimum weight provisions of Rule 34 in Western Classification No. 70 until March 2,1945, when, as a result of a request submitted by the War Department, Tariff 173-0 was superseded by Tariff 173-S, which re-published the minimum weight exceptions of Tariff 173-0 and added thereto a minimum weight exception of 16,000 pounds for cars exceeding 50 feet 8 inches in length. The amendment resulted from a letter written on April 14,1944, by the Transportation Corps of the War Department in which reference was made to Southwestern Lines’ Tariff 173, and it was stated that, since this and other exceptions in the tariffs mentioned did not provide minimum weights for cars more than 50 feet 8 inches long, the ratings and minimum weights provided for in the classification applied. Although we do not regard the construction given by the parties to the pertinent tariffs as controlling in the absence of other facts, such contemporary construction adds some weight to other considerations which are present.
Tariff 173-S, which became effective March 2, 1945, and added a provision fixing a minimum weight of 16,000 pounds *552 for cars over 50 feet 8 inches long in which motor vehicles were loaded, carried a teardrop symbol applicable to the territory through which the shipments in dispute moved. This symbol meant that there had been a reduction in the minimum weights that had applied prior to the effective date of the amended tariff.
The result we have reached accords with the decision of the Interstate Commerce Commission in Alkire-Smith Auto Company et al. v. Bamberger Electric Railroad Company et al., 169 I. C. C. 97. That case involved the shipment of the automobiles in cars 86 feet long, each shipment weighing less than 10,000 pounds. The carrier applied a minimum weight of 10,000 pounds pursuant to Eule 34 of the Western Classification, whereas the shipper relied upon a commodity tariff which provided for minimum weights of shipments in cars more than 36 feet 6 inches long and not more than 50 feet 6 inches long. No minimum weight was provided for shipments in cars of less than 36 feet 6 inches in length but there, as here, the commodity tariff stated that it was governed, except as otherwise specifically provided therein, by the Western Classification. The Commission held that the minimum weight specified in Eule 34 of the Western Classification applied.
As we have stated above, the facts in the case before us are not in dispute and we think that it involves only a question of tariff interpretation. However, if we were of the opinion that this action raises issues within the primary jurisdiction of the Interstate Commerce Commission, we would hold that the Commission has clarified the factors underlying the tariffs involved here in the decision cited above.
The parties have stipulated that if the minimum weights set out in the classification relied on by plaintiff are applicable, plaintiff is entitled to recover the sum of $3,049.08. It follows from what we have said above that judgment will be entered for plaintiff in that amount.
It is so ordered.
Laramore, Judge; Madden, Judge; Whitaker, Judge; and LitteetoN, Judge, concur.
*553 FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a corporation created, organized and existing under the laws of the State of North Carolina, is a common carrier by railroad of persons and property for hire wholly within said State, and is engaged in interstate commerce and subject to the Interstate Commerce Act, its tariff charges for transportation services rendered being duly published and filed as required by law. Plaintiff’s lines of railroad connect with the lines of other common carriers by railroad who are likewise engaged in interstate commerce and subject to the Interstate Commerce Act and whose tariff charges for transportation services rendered are duly published as required by law. Plaintiff was not and is not a land-grant carrier, but during the period here involved was party to the equalization agreement entered into between defendant and non-land-grant railroads under which its rates were equalized with the rates of land-grant carriers.
2. On July 5, 1942, defendant tendered to plaintiff and its connecting carriers various carload shipments under Government bills of lading for movement from Leesville, Louisiana, to Ansonville, North Carolina. The shipments, consisting of motor vehicles including trucks, motorcycles, ambulances, jeeps and passenger cars and some trailers, were loaded on open cars. The bills of lading each listed several carload shipments.
3. The said shipments were delivered on July 8, 1942. Plaintiff submitted its bills for the services rendered on September 23,1942, and defendant paid the bills as presented on October 13 and 14,1942.
4. The General Accounting Office, upon a post-audit of the paid bills, determined that plaintiff had been overpaid in the amount of $3,146.90, which sum was refunded without protest by plaintiff upon request by the General Accounting Office. Later plaintiff submitted supplemental bills reclaiming the amount refunded and plaintiff’s claim was disallowed by the General Accounting Office.
*554 5. Thereafter, plaintiff filed suit to recover the sum of $3,146.90, previously refunded. The court granted plaintiff’s motion for summary judgment, holding that the jeeps involved in the shipments should be classified as passenger rather than as freight vehicles, but entry of judgment was suspended pending a computation by the General Accounting Office as to the amount that would be due plaintiff on the basis of rating the jeeps as passenger vehicles.
6. The General Accounting Office computed the charges in accordance with the court’s decision, but plaintiff takes exceptions to the tariff provision used by the General Accounting Office to determine the minimum weights applicable to the cars used for the shipments. All other issues have been resolved between the parties.
7. The cars involved in this dispute exceeded 50 feet 8 inches in length.
8. The issue here involves the interpretation of tariffs to determine the proper minimum weight to be used in computing the freight charges. The shipments consisted of both freight and passenger automobiles, and plaintiff contends that proper charges should be computed on the basis of a minimum weight of 20,000 pounds for passenger automobiles and 24,000 pounds for freight automobiles, as provided in Rule 34 of Consolidated Freight Classification No. 15, which included Western Classification No. 70.
Defendant contends that the proper charges should be computed on the basis of a minimum weight of 12,500 pounds, the highest minimum weight provided in item 9220 of Southwestern Lines’ Tariff No. 173-0.
9. The shipments in issue moved from Leesville, Louisiana, to Ansonville, North Carolina. The relevant tariffs are Southwestern Lines’ Tariff No. 254-A and supplements thereto, Consolidated Freight Classification No. 15, which includes Western Classification No. 70, and Southwestern Lines’ Tariff No. 173-0.
10. The rates which are not in dispute here are contained in Southwestern Lines’ Tariff No. 254r-A. Supplement No. 52 of that tariff, which was effective at the time of the shipments, states on its cover page:
*555 Governed, except as otherwise provided herein by Western Classification No. 70, R. C. Fyfe’s I. C. C. No. 28, and by exceptions thereto, Southwestern Lines’ Tariff No. 173-0, J. R. Peel’s I. C. C. No. 3475 and Western Trunk Line Tariff No. 386-C, J. R. Peel’s I. C. C. No. 3441 and supplements to or successive issues of said publications.
The identical language quoted is contained in prior issues of the same tariff.
11. Western Classification No. 70, which is contained in Consolidated Freight Classification No. 15, item 43780, provides a carload minimum weight of 12,000 pounds on shipments of freight automobiles, and item 43785 thereof provides a carload minimum weight of 10,000 pounds on shipments of passenger automobiles.
As indicated by the letter “R” after the figure showing the minimum weight, both items are subject to Rule 34.
Sections 5 and 7 of Rule 34 read as follows:
Section 5. When articles shown in the Classification, exceptions thereto or in tariffs governed thereby, subject to provisions of this Rule by specific reference to number thereof, or to the letter “R”, are loaded on open cars 36 feet _ 6 inches or less in length, they shall be charged at minimum CL weights specified therefor in separate descriptions of articles. Except as provided in Section 6, when such articles are loaded on cars exceeding 36 feet 6 inches in length, minimum CL weights to be charged shall be as provided in Section 8. Weight in excess of minimum weight provided for in this Rule must be charged for.
‡ *
Section 7. Except when furnished by carrier in place of shorter open car ordered, if an open car over 36 feet 6 inches in length is used by shipper for loading articles subject to Rule 34, without previous order having been placed by shipper with carrier for car of such size, minimum weight shall be that fixed for car used.
Section 8 of Rule 34 contains a table showing the minimum carload weights applicable on articles made subject to Rule 34 in open cars. The table, in so far as pertinent here, shows:

*556

12. Item 9220 of Southwestern Lines’ Tariff No. 178-0 reads in pertinent part as follows:
Section 8
EXCEPTIONS TO RATINGS IN CURRENT WESTERN CLASSIEICATION

*557 Under the column “Territorial Application,” the reference “D” covers the territory involved here.
13. Section 1 of item 9240 of Southwestern Lines’ Tariff No. 173-0 reads in part as follows:

The reference “D” in section 1 of item 9240 covers the same territory as the shipments in suit.
14. Item 78 on page 50 of Southwestern Lines’ Tariff No. 173-0 provides as follows under the heading of “General Application”:
The ratings provided by Exceptions to the current Western Classification in this Tariff (or in tariffs governed by this Tariff) are subject to all the conditions and provisions prescribed in the current Western Classification for a like shipment in connection with the ratings (carload or less carload, as the case may be) in said Classification, except as follows:
(a) Nothing in this item shall be construed to modify or supersede any of the provisions in said Classification which are specifically applicable to ratings established by Exceptions to the Classification, except as otherwise provided in paragraph (c) of this item.
(b) Nothing in this item shall he construed to establish, for application in connection with ratings referred to, any provision of the said Classification which is ex-
*558 (c) No provision contained in the said Classification shall be construed to supersede any specific provision contained in this Tariff (or in tariffs which are governed by this Tariff).
15. On April 14, 1944, the Chief of the Traffic Control Division, Transportation Corps, War Department, wrote the American Association of Railroads as follows:
There has recently been brought to the attention of this office the practice of the carriers of supplying open-top and flat car equipment exceeding 51 feet in length, for loading freight automobiles, praticularly [sic] fuel or oil servicing trucks.
Fuel or oil servicing trucks Weight approximately 11,820 pounds each. The over-all measurements are: length 21 feet V/2 inches, height 8 feet, and width 7 feet 7 inches. Two units can be loaded in any gondola car or on any flat car 44 feet in length or longer.
Some of the Western lines have, recently, placed in service a number of new flat cars exceeding 51 feet in length. For example: C. G. W. cars 3900 to 3999 series, 52 feet, 2-inches in length; C. M. St. P. & P. cars 64,000 to 64,399 series, 53 feet, 6 inches in length and cars 65,000 to 65,968 series, 52 feet, 6 inches in length and Soo Line cars 5201 to 5399 series, 53 feet, 6 inches in length.
A number of the tariffs, in the various territories, applicable on freight automobiles, do not provide rates and minimum weights for cars exceeding 50 feet, 8 inches or 51 feet, as the case may be, in length. The full classification ratings and minimum weights are applicable on such shipments.
The following are examples of instances where such a condition exists: Pages 39 and 55 of C. F. A. Tariff 498-J, Agent B. T. Jones’ ICC No. 3472; Item 12170, C. F. A. Exceptions 130-B, Agent B. T. Jones’ I. C. C. No. 3684; Item 9220 S. W. L. Tariff 173-Q, Agent J. R. Peel’s ICC No. 3584; Items 5150 and 5160 W. T. L. Tariff 25-E, Agent L. E. Kipp’s I. C. C. No. A-3538 and Item 770 W. T. L. Tariff 338-J, Agent L. E. Kipp’s I. C. C. No. A-3529.
Similar situation was called to the attention of the Trans-Continental lines recently, and effective February 15,1944, Item 5520-A of Trans-Continental Tariffs Nos. 1-X and 4-U was amended to provide for minimum weights of 16,000 pounds and 20,000 pounds for cars exceeding 51 feet in length where present minimum weights are 12,000 and 15,000 pounds respectively for cars of 51 feet in length.
*559 Mr. J. G. Stubbs, Chairman, Trans-Continental Freight Bureau, is being requested to make similar changes in other items of Trans-Continental Freight Bureau Tariffs as per letter of April 14, copy of which is attached for your information.
There are a number of the tariffs which provide that the minimum weights as published apply on shipments loaded m cars of the specified length. In a few instances, representatives or agents of the carriers have attempted to construe the wording of the tariff to mean that the rates and minimum weights were applicable only on shipments loaded in closed cars.
It is requested the various tariffs applicable on automobiles be amended to provide for minimum weights of 16,000 pounds and 20,000 pounds for cars exceeding 50 feet 8 inches or 51 feet, as the case may be, in length where present minimum weights are 12,000 and 15,000 pounds respectively for cars 50 feet 8 inches or 51 feet, as the case may be, in length and corresponding minimum weights in such instances where there are variations in the minimum weights applicable to cars not exceeding 50 feet 8 inches or 51 feet in length.
It is also requested that the tariffs be amended to make it clear that the rates and minimum weights on automobiles apply on shipments loaded in both closed cars and in or on open top or flat car equipment.
Inasmuch as these odd length cars have been in service for some time, it is requested that the carriers provide by means of a Section 22 Quotation for application of the rates and minimum weights as requested, subject to Land Grant deductions, including those published in Item 5520-A of T. C. F. B. Tariffs 1-X and 4-U, on past shipments which moved during the years of 1943 and 1.944.
There is. a. large volume of this traffic now moving; therefore, it is requested that this matter be given emergency consideration.
16. As a result of the request contained in the letter quoted in the preceding finding, item 9220 of Southwestern Lines’ Tariff No. 173-0 was revised in Southwestern Lines’ Tariff No. 173-S, which became effective March 2, 1945. Section 1 of the revision states that in lieu of the minimum weights provided in the Western Classification, the following minimum weights apply on shipments of freight and passenger automobiles loaded in both closed cars and in or on open-top or fiat equipment:
*560 In cars exceeding 50 feet 8 inches in length (inside measurement), 16,000 pounds. (Note 5)
The territorial reference “D” opposite this revision applies to the territory involved here, and this reference bears a teardrop symbol, which means a reduction.
17. Plaintiff is a member of the American Association of Railroads. Prior to 1944, item 5520-A of Trans-Continental Tariff, Nos. 1-X and 4-XJ, did not provide any minimum weights for shipments in cars over 51 feet in length. The item in these tariffs was amended in 1944 to provide for minimum weights for shipments in cars exceeding 51 feet in length. In 1944, the Office of the Chief of Transportation in the War Department had requested that these tariffs be amended to establish minimum carload weights on freight or passenger vehicles loaded on open cars more than 51 feet long, and it also requested that the carriers submit a Section 22 Quotation to provide for the application of the rates and minimum weights on past shipments made during the years 1943 and 1944. In reply to this request, the American Association of Railroads wrote the Office of the Chief of Transportation on January 25, 1945, in part as follows:
In conformity with the findings of the Interstate Commerce Commission in Sunderland Bros. Co. v. M. K. & T. Ry. Co., 18 I. C. C. 425 and a ruling of the Commission set forth in a letter, August 29,1944, the charges on the past shipments during the period when there was no minimum weight provided for 51-ft. cars may be treated as straight overcharges.
At a recent meeting of the Chairmen’s Committee, I was requested to advise you that if you will handle these matters direct with the Pacific Coast Terminal Lines, the charges will be adjusted to the proper basis.
As shown in defendant’s exhibit 4, the ruling set forth in fclie Interstate Commerce Commission’s letter of August 29,
1944, pertained to item 5520 of Agent Kipp’s Tariff I. C. C. No. 1498. The ruling stated that note 8 of item 5520 made Rule 34 of the Consolidated Freight Classification inapplicable.
The above-quoted statement in the letter of January 25, 1945, .from the American Association of Railroads to the *561 War Department was amended by a letter of March 15,1947, which reads as follows:
In conformity with the findings of the Interstate Commerce Commission in 18 I. C. C. 425, the Trans-Continental lines have approved on traffic moving prior to the establishment of provisions in the tariffs providing minimum weight for cars in excess of 51 feet loaded with Automobiles, protection of the carload rate at actual weight, subject to the minimum carload weight provided for 51-foot cars on shipments loaded on longer cars.
18. The provisions of item 9220, which are quoted in finding 12, were first published in Supplement 20 to Southwestern Lines’ Tariff No. 173-E under item 34-3-C, effective October 3,1933, and remained in effect until revised by Southwestern Lines’ Tariff No. 173-S, effective March 2, 1945.
The evidence does not establish when cars exceeding 50 feet 8 inches in length were first placed in service by the carriers. However, at the time the shipments involved in this case were made many of the carriers owned a large number of cars 52 feet long or longer. These extra length cars had been in service for some time.
19. The motor vehicles with which this action is concerned could have been loaded in cars less than 50 feet 8 inches long, but as previously stated, they were actually loaded in cars of greater length. There is no evidence as to the size of the cars ordered, and there is no issue as to the size of the cars used.
20. Plaintiff presented the testimony of two expert witnesses, who concluded that the minimum weights provided for in Pule 34 of Western Classification No. 70 are applicable here because:
(a) Southwestern Lines’ Tariff No. 254-A, which published the rates, is governed by both Western Classification No. 70, which contains Rule 34, and by Southwestern Lines’ Tariff No. 173-0, which contains item 9220;
(b) item 9220 of Southwestern Lines’ Tariff 173-0 prescribes minimum weights for cars “exceeding 40 feet 7 inches but not more than 50 feet 8 inches in length”, and the application of the 12,500 pounds minimum weight therein stated to cars of greater length would be reading into item 9220 some *562 thing which is not there and would fail to apply the minimum weights for longer cars as specified in section 8 of Rule 34 of Western Classification No. 70;
(c) the function of an exceptions tariff such as Southwestern Lines’ Tariff No. 173-0 is to remove an item from the classification but only to the extent stated in the exceptions tariff itself. For example, item 9220 not only fails to specify minimum weights for the extra long cars but refers to the Western Classification for a rating, whereas item 9240 on the same page of the tariff contains a specific rating and provides minimum weights for all cars;
(d) item 9220 was in effect from 1933 until it was revised on March 2,1946;
(e) the revision was made pursuant to the War Department letter of April 14,1944, (finding 16), which stated that since a number of the tariffs, including Southwestern Lines’ Tariff No. 173, failed to provide rates and minimum weights for the extra long cars, the full classification ratings and minimum weights were applicable to such shipments; and
(f) the revision of item 9220 in Southwestern Lines’ Tariff No. 173-S was. accompanied by a teardrop symbol, which indicates that the minimum weight of 16,000 pounds therein specified for cars over 50 feet 8 inches long was a reduction in the minimum weights previously provided for in applicable tariffs.
In support of its position, plaintiff relies on the decision of the Interstate Commerce Commission in Alkire-Smith Auto Co. v. Bamberger Electric Railroad Co., a copy of which is in evidence as plaintiff’s exhibit 3, and upon the Commission’s informal decision of May 20, 1948, a copy of which is in evidence as plaintiff’s exhibit 4.
21. Defendant also presented the testimony of two expert witnesses who concluded that a minimum weight of 12,500 pounds, the highest minimum weight provided for in item 9220 of Southwestern Lines’ Tariff No. 173-0, is applicable here because
(a) item 9220 in Southwestern Lines’ Tariff No. 173-0 is preceded by a heading stating that it is an exception to ratings in the current Western Classification, and section 2 *563 of item 9220 provides that the minimum weights specified in that item are “in lieu of the minimum weights provided in the current Western Classification”;
(b) note 2 under item 9220 gives notice that the carriers do not obligate themselves to supply cars more than 50 feet 8 inches long;
(c) the function of an exceptions tariff such as item 9220 is to remove articles from the classification and to establish rates and rules different from those in the classification; and
(d) item 9220 unequivocally and without limitation removed the articles shipped from the classification insofar as minimum weights are concerned and, therefore, the tariff fails to provide minimum weights for the cars involved here. In that situation, the Interstate Commerce Commission has held in Sunderland Bros. v. M. K. & T. Ry Co., 18 I. C. C. 425, that the carload rate must be applied to the actual weight of the shipment.
22. The General Accounting Office realized that use of the actual weights of the shipments pursuant to the Sunderland Bros, case would create an inequitable situation. Accordingly, its computations were made on the basis of a minimnm weight of 12,500 pounds, the highest minimum weight stated in item 9220.
23. The parties have agreed that if the minimum weights set out in the classification relied upon by plaintitiff are to be applied, plaintiff is entitled to recover the sum of $3,049.08, but that if the minimum weight of 12,500 pounds as asserted by the defendant is to be applied, plaintiff is entitled to recover the sum of $536.36. ■ •
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that it recover of and from the United States three thousand forty-nine dollars and eight cents ($3,049.08).