IíAramoRe, Judge,
delivered the opinion of the court:
This is an action by plaintiff to recover amounts allegedly due it for transportation services rendered to defendant.
Two cases are here involved and these cases were tried together since they involve the same issue, which is the interpretation of tariff provisions to determine the proper class ratings to be used in computing plaintiff’s freight charges. The issues to be resolved cover only a part of the claim set forth in the petition in these two cases. With respect to case number 579-52, the bills involved are:

Bill number Bill of lading number Amount claimed

47954 WV-4136698 $150.74
48490 WV-7196993 94.38
WV-7197003 94.38
WV-7197291 124.54
WV-7197053 164.19
48533 WV-7191105 66.49
49139 WV-7204612 59.88
49919 WV-8871764 138.40
WV-8871772 87.70
WV-8871771 87.70
WV-8871770 '68.80
WV-8871765 88.80
59588 WV-8871766 86.40
60432 WW-613737 141.11
$1,453.51
With respect to case number 149-59, the bills involved are:

Bill number Bill of lading number Amount claimed

44678 $135.08
49821-B WW-1830342 129.80
52100-C 197.64
28559-E WQ-4728254 212.00
WQ-4728267 284.00
WQ-4728280 232.00
WQ-4728317 52.00
WQ-4728239 212.66
WQ-4728246 297.00
WOr-4728268 368.44
WQ-4728286 59.55
WQ-4728310 39.33
WQ-4728321 52.00
$2,271.50
*3 The parties have agreed that the remaining bills fall in three categories and are to be disposed of as follows:
(a) Category No. 1 covers a gronp of bills which involve the same issue as was decided in Atlantic Coast Line Railroad v. United States, 136 Ct. Cl. 1, and the net amount due plaintiff on such bills in docket number 579-52 is the sum of $1,048.27, and in docket number 149-59 is the sum of $3,371.30. Judgment for these amounts is to be entered for plaintiff when the other issues involved in the petitions have been disposed of to the extent that judgment can be entered on all of plaintiff’s claims;
(b) Category No. 2 covers a group of bills which present the same issue as is involved in Boston and Maine Railway Co. v. United States, No. 186-52, which has been referred to the Interstate Commerce Commission for determination, and the parties have agreed that such bills are to be disposed of on the basis of the final judgment rendered in that case;
(c) Category No. 3 covers a group of bills which present the same issue as is involved in Chesapeake & Ohio Railway Co. v. United States, No. 308-54, which has also been referred to the Interstate Commerce Commission for its determination, and the parties have agreed that such bills are to be disposed of on the basis of the final judgment in that case.
The facts are these: Plaintiff, a common carrier by railroad, transported automobile bodies from and to various points in the United States for defendant during the years 1942 to 1952. The plaintiff submitted freight bills to the defendant and was paid for the transportation services rendered. On a postaudit of the bills by the General Accounting Office, it was determined that plaintiff had been overpaid. Consequently, a deduction of the amount of alleged overpayments was made from other bills due the plaintiff. This suit resulted in which plaintiff sues to recover said amounts.
For the purpose of the issue now before the court, the parties have agreed that Bill of Lading WV-5878950 shall be representative of all the shipments involved. On said bill of lading, defendant tendered to plaintiff a carload shipment of freight automobile bodies for movement *4 from Allentown, Pennsylvania, to Philadelphia, Pennsylvania. The shipment weighed 67,340 pounds and was loaded on an open 52-foot car, although the defendant ordered a 46-foot car. However, for the purpose of these suits, the parties have agreed that the charges should be computed on the basis of the size of the car actually used.
In determining the rate to be charged for this shipment, plaintiff relied on the minimum weight and rating in Consolidated Freight Classification No. 16 and on Rule 34. Item 2885 of Consolidated Freight Classification No. 16 provided for a carload rating of Class 4 for the shipment of boxed automobile bodies with a carload minimum weight of 20,000 pounds, subject to Rule 34. Sections 5 and 7 of Rule 34 read as follows:
Section 5. When articles shown in the Classification, exceptions thereto or in tariffs governed thereby, subject to provisions of this Rule by specific reference to number thereof, or to the letter “R”, are loaded on open cars 36 feet 6 inches or less in length, they shall be charged at minimum CL weights specified therefor in separate descriptions of articles. Except as provided in Section 6, when such articles are loaded on cars exceeding 36 feet 6 inches in length, minimum CL weights to be charged shall be as provided in Section 8. Weight in excess of minimum weight provided for in this Rule must be charged for.
* * # % #
Section 7. Except when furnished by carrier in place of shorter open car ordered, if an open car over 36 feet 6 inches in length is used by shipper for loading articles subject to Rule 34, without previous order having been placed by shipper with carrier for car of such size, minimum weight shall be that fixed for car used.
Section 8 of Rule 34 contains a table showing minimum carload weights applicable on articles made subject to Rule 34 in open cars. However, both plaintiff and defendant used the actual weight in computing the charge. Under plaintiff’s method of computation, a total charge of $181.82 was made for the shipment under Bill of Lading WV-5878950.
The defendant rejected plaintiff’s charges based upon Consolidated Freight Classification No. 16, and in so doing relied *5 on the rating in Exceptions Tariff 90-J and Item 2250 thereof. Item 2250, as set forth in finding 12, contains no provision for a minimum weight and rating for shipments of automobile bodies in cars exceeding 50 feet 6 inches in length. This gives rise to the issue before us since, as previously stated, the shipment here involved was made on a 52-foot car.
The parties are in agreement that the classification rating would apply if the rating in the exceptions tariff is inapplicable. Thus the issue is whether the rating in the exceptions tariff applies.
It is plaintiff’s position that the Class 4 rating provided in Item 2885 of Consolidated Freight Classification No. 16 is applicable to the shipments in issue because:
(1) Item 2250 of Exceptions Tariff No. 90-J provides minimum weights and class ratings for cars in excess of 40 feet 7 inches but not exceeding 50 feet 6 inches in length, and therefore has no applicable provision for minimum weights and ratings for longer cars of the size that transported the shipment under Bill of Lading WV-5878950;
(2) Since the car actually used for the shipment was 52 feet in length and therefore longer than the maximum length provided for in Item 2250 of the Exceptions Tariff, the shipment remained subject to the provisions of Consolidated Freight Classification No. 16 and Rule 34 and the Class 4 rating applies in determining the freight charge;
(3) The function of an Exceptions Tariff, such as Tariff 90-J is to remove an item from the application of the Consolidated Freight Classification insofar as it affects the classification. For the shipment in issue, ratings set forth in the Consolidated Freight Classification No. 16 are eliminated only to the extent of the minimum weights and the sizes of the cars provided for in the exceptions tariff. Otherwise, the class rating provided in the Consolidated Freight Classification No. 16 remains in effect. Since the exceptions tariff provides no minimum weight for cars exceeding 50 feet 6 inches, the rating in the exceptions tariff is not applicable.
For support of its position, plaintiff relies on the case of Winston-Salem Southbound Railway Co. v. United States, 139 Ct. Cl. 548.
*6 Defendant, as stated earlier, contends that the rating in the exceptions tariff should apply, asserting that the function of an exceptions tariff is to remove articles from the classification.
We have no quarrel with this contention and believe it to be a correct interpretation, provided the shipments are clearly covered by the exceptions tariff. However, here for reasons unexplained in the facts or briefs, the exceptions tariff relied on by defendant just does not cover shipments in cars exceeding 50 feet 6 inches in length and is specifically restricted to cars in excess of 40 feet 7 inches, but not exceeding 50 feet 6 inches in length. With this specific restriction in mind, we cannot conceive how the exceptions tariff could apply. This was almost the exact situation in the Winston-Salem case, supra, wherein this court held for the carrier on the same theory as urged here by plaintiff.
Furthermore, since we have no doubt that the exceptions tariff does not apply to cars in excess of 50 feet 6 inches in length, and since the exceptions tariff is particularly free from ambiguity, the case of Union Pacific Railroad Company v. United States, 152 Ct. Cl. 523, 287 F. 2d 593, and Bolin Drive-A-Way Co. v. United States, 151 Ct. Cl. 164, 283 F. 2d 697, cited by defendant, have no application.
Defendant further contends that its position has been endorsed and accepted by the plaintiff through its agent, the Association of American Railroads, and plaintiff is estopped to claim otherwise (See findings 15 and 16).
However, the informal ruling of the Interstate Commerce Commission on August 29, 1944, the letter dated April 14, 1944 from the Office of the Chief of Transportation, War Department, and the Association of American Railroads’ answer, were present and considered by this court in the Winston-Salem case, supra. Despite this, the court entered judgment for plaintiff in the Winston-Salem case (See findings 15,16, and 17 of the Winston-Salem case).
Since we hold that the exceptions tariff, contended for by defendant, does not apply, resort must be had to the classification tariff which does provide ratings and minimum weights for shipments in the cars used.
*7 The parties have agreed that if the court holds Consolidated Freight Classification No. 16 to be applicable to the shipments here in issue, plaintiff is due the sum of $1,453.51 with respect to case number 579-52, and $2,271.50 with respect to case number 149-59. Inasmuch as we conclude that Consolidated Freight Classification No. 16 is applicable, plaintiff is entitled to recover the sums set forth above, but entry of judgments therefor will be suspended pending the determination of the remaining issues in this case.
It is so ordered.
Need, Justice (Ret.), sitting by designation; Durfee, Judge, and Jones, Chief Judge, concur.
FINDINGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Wilson Cowen, and the briefs and argument of counsel, makes findings of fact as follows:
1. These cases were tried together since they involve the same issue, which is the interpretation of tariff provisions to determine the proper class ratings to be used in computing plaintiff’s freight charges. The issue to be resolved covers only a part of the claims set forth in the petitions in these two cases. With respect to docket number 579-52, the bills involved are:

B%U number Bill of ladwig number Amount downed

47954 WV-4136698 $150.74
48490 WV-7196993 94.38
WY-7197003 94.38
WV-7197291 124.54
WV-7197'053 164.19
48533 WV-7191105 66.49
49139 WV-7204612 59.88
49919 WV-8871764 138.40
WV-8871772 87.70
WV-8871771 87.70
WV-8871770 68.80
WV-8871765 88.80
WV-8871766 86.40 e* c* oo 00
WW-613737 141.11 a o n* co to
$1,453.51
*8 With respect to docket number 149-59, the bills involved are:

Bill number Bill of lading number Amount claimed

44678 $135. 08
49821-B WW-1830342 129.80
52100-C 197. 64
28559-E WQ-4728254 212.00
WQ-4728267 284. 00
WQ-4728280 232.00
WQ-4728317 52.00
WQ-4728239 212. 66
WQ-4728246 297.00
WQ-4728268 368.44
WQ-4728286 59. 55
WQ-4728310 39.33
WQ-4728321 52.00
$2,271.50
2. Plaintiff, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, is a common carrier by railroad of persons and property for hire over its own lines and jointly with other common carriers. It is engaged in interstate commerce and subject to the Interstate Commerce Act, and is a member of the Association of American Railroads.
3. On various dates from April 1942 through February 1952, plaintiff, in conjunction with other railroad carriers and at the request of proper officials of the United States Government, transported automobile bodies from and to various points in the United States.
4. Plaintiff, as delivering carrier of such shipments, submitted to the defendant freight bills for the transportation services rendered. As required by Section 322 of the Transportation Act of 1940 (49 U.S.C. 66), defendant paid the bills as presented.
5. The General Accounting Office, on a post audit of the paid bills, determined that plaintiff had been overpaid and deducted the amount of the alleged overpayments from other bills of plaintiff. Plaintiff filed supplemental bills for the *9 amounts deducted, which bills were disallowed by the General Accounting Office.
6. Thereafter plaintiff filed these suits to recover the deductions and contends that the proper charges should be computed on the basis of the Class 4 rating and minimum weights provided in item 2885 of Consolidated Freight Classification No. 16, subject to Rule 34, and on the basis of the sizes of the cars actually used for the shipments.
7. The General Accounting Office computed the freight charges on the basis of the ratings provided in item 2250 of Trunk Line Tariff Bureau W. S. Curlett, Agent, Tariff No. 90-J, Exceptions to Official Classification and other exceptions tariffs identical in all respects to Tariff 90-J, and upon the actual weights of shipments or the minimum weights for the longest cars named in the exceptions tariff, whichever is greater.
8. Consolidated Freight Classification No. 16, Exceptions Tariff No. 90-J and the exceptions tariffs listed hereinbelow were in effect during the dates the shipments moved and applied to the territory in which they moved and to the commodities shipped. The parties have agreed that:
Trunk Line Tariff Bureau W. S. Curlett, Agent, Tariff No. 90-1, Exceptions to the Official Classification.
Central Freight Association Tariff Bureau, Tariff No. 130-B, Exceptions to Official Classification.
Central Freight Association Tariff Bureau, Tariff No. 130-C, Exceptions to Official Classification.
New England Freight Association Tariff Bureau, Tariff No. 30-J, Exceptions to Official Classification, are in all material respects identical to Exceptions Tariff No. 90-J and are applicable to the shipments in suit.
9. There is no dispute as to the rates applicable to the shipments but only as to the applicable ratings. If the ratings in the exceptions tariffs apply, defendant prevails; if the rating in Consolidated Freight Classification No. 16 applies, plaintiff prevails.
10. On bill of lading No. WV-5878950, agreed by the parties to be representative of the shipments in suit herein, defendant tendered to plaintiff a carload shipment of freight *10 automobile bodies for movement from Allentown, Pennsylvania, to Philadelphia, Pennsylvania. The Government ordered a 46-foot car; the shipment was loaded on an open 52-foot car on March 16,1945. The shipment weighed 67,340 pounds. Plaintiff claims entitlement to a rate of 27 cents per hundredweight on 67,340 pounds or a total of $181.82 on said shipment under bill of lading WV-5878950. Plaintiff relies on the rating in Consolidated Freight Classification No. 16 and on Rule 34. Defendant claims the applicable rate to be 20 cents per hundredweight on 67,340 pounds or a total of $134.68 for said shipment. Defendant relies on the rating in Exceptions Tariff 90-J.
11. Item 2885 of Consolidated Freight Classification No. 16 (joint exhibit No. 3) provided for a carload rating of Class 4 for the shipment of boxed automobile bodies with a carload minimum weight of 20,000 pounds, subject to Rule 34.
Sections 5 and 7 of Rule 34 read as follows:
Section 5. When articles shown in the Classification, exceptions thereto or in tariffs governed thereby, subject to provisions of this Rule by specific reference to number thereof, or to the letter “R”, are loaded on open cars 36 feet 6 inches or less in length, they shall be charged at minimum CL weights specified therefor in separate descriptions of articles. Except as provided in Section 6, when such articles are loaded on cars exceeding 36 feet 6 inches in length, minimum CL weights to be charged shall be as provided in Section 8. Weight in excess of minimum weight provided for in this Rule must be charged for.
$ $ $ * *
Section 7. Except when furnished by carrier in place of shorter open car ordered, if an open car over 36 feet 6 inches in length is used by shipper for loading articles subject to Rule 34, without previous order having been placed by shipper with carrier for car of such size, minimum weight shall be that fixed for car used.
Section 8 of Rule 34 contains a table showing the minimurn carload weights applicable on articles made subject to Rule 34 in open cars. The table, insofar as pertinent here, shows:

*11

12. Trunk Line Tariff Bureau W. S. Curlett, Agent, Tariff No. 90-J, Exceptions to Official Classification (joint exhibit No. 2), provided in section 1 thereof, entitled “Exceptions to Official Classification”, as follows:
(a) The ratings, rules and weights herein provided for will take precedence over the ratings, rules and weights provided for in the Official Classification on the same article.
(b) The exceptions named herein, unless otherwise provided, are subject to the rules, conditions and other requirements of Official Classification and to the conditions of the Uniform Bil [sic] of Lading.
Item 2250 of Tariff No. 90-J reads in pertinent part as follows:

*12

*13

*14 13. Exceptions Tariff No. 90-J contains an “Alternation of Ratings” item, which provides .in pertinent part:
Item No. 12. alternation of eatings published heRein with oeeicial classification. Applies only in connection with items making specific reference hereto.
If the charge accruing under the rating in the Official Classification (see Item No. 50) is lower than the charge accruing under the rating referring hereto, the lower charge resulting from the Official Classification rating will apply.
14. As shown by the foregoing quotations from the tariffs, the actual weight of the representative shipment exceeded the minimum weights provided in item 2885 of Consolidated Freight Classification No. 16, in section 8 of Rule 34, and in item 2250 of Tariff No. 90-J. Both plaintiff and defendant used the actual weight of the shipment in computing the charges. Consequently, there is no dispute as to the weight to be used in computing such charges and for the purposes of these suits, the parties have agreed that the charges should be computed on the basis of the size of the cars used.
15. On August 29, 1944, the Interstate Commerce Commission made an informal ruling on a complaint presented by the shipper against the Pacific Electric Railway Co. with respect to charges for the transportation of six trucks. The informal ruling, which was contained in a letter written to the railway company, read in part as follows:
You state that charges were necessarily collected at the second-class carload rate, subject to the carload minimum weight provided for the size of car ordered, because the commodity rate of 3040 per 100 lbs. named in Bipp’s ICC 1498 made no provisions for cars over 51 feet in length. It is observed that under Note 8 of Item 5520 of Kipp’s ICC 1498, Rule 34 of the Classification is made inapplicable.
Your attention is invited to the Commission’s findings in Sunderland Bros. Co. v. M.K. & T. Ry. Co., 18 I.C.C. 425, in which the Commission held as follows:
“The absence of a legally established minimum carload weight suggests the inquiry as to the quantity upon which a shipper might claim the benefit of the carload rate in preference to the less-than-carload rate. And for the purpose of laying down a general rule we hold that *15 when a car is demanded and loaded by the shipper and is tendered and otherwise handled as a carload and no minimum carload weight is legally provided, the carload rate, if it takes less than the L.C.L. rate, must be applied on the actual weight. It lies in the power of a carrier to protect its revenues by fixing, in the manner provided by law, minimum weights to be applicable under its published carload rates. If it fails to take this precaution we think it imposes no hardship upon it to give a shipper the benefit of the carload rate on the actual weight of the shipment tendered as a carload, whether it be more or less than an ordinary carload quantity. We dispose of this complaint on that theory, and the ruling may be understood as being applicable to all cases of this kind arising in the future.”
It is accordingly requested that you advise the Commission whether it wifi be your purpose to adjust the charges to the basis of those accruing at the commodity rate and actual weight in this instance.
16. In response to a written request submitted under date of April 14,1944, from the Office of the Chief of Transportation, War Department, to the Association of American Railroads (see finding 15 of Winston-Salem, Southbound Railway Co. v. United States, 139 Ct. Cl. 558), the Association of American Railroads replied by letter of January 25, 1945, stating that the Trans-Continental tariffs had been amended. The letter concluded as follows:
In conformity with the findings of the Interstate Commerce Commission in Sunderland Bros. Co. v. M.K. & T. Ry. Co., 18 I.C.C. 425 and a ruling of the Commission set forth in a letter, August 29,1944, the charges on the past shipments during the period when there was no minimum weight provided for 51 ft. cars may be treated as straight overcharges.
* « # * ‡
The above-quoted statement in the letter of January 25,1945, was amended by letter from the Association of American Railroads to the War Department under date of March 15, 1947, to read as follows:
‡ ‡ ‡ $
In conformity with the findings of the Interstate Commerce Commission in 18 I.C.C. 425, the Trans-Continental lines have approved on traffic moving prior to *16 the establishment of provisions in the tariffs providing minimum weight for cars in excess of 51 feet loaded with Automobiles, protection of the carload rate at actual weight, subject to the minimum carload weight provided for 51 foot cars on shipments loaded on longer cars.
* * *
17. As stated in finding 10, the representative shipment was loaded on a 52-foot car and weighed 67,340 pounds. If the carrier had shipped the goods in two smaller cars, each 40 feet long or 40 feet 6 inches long, item 2250 of Exceptions Tariff 90-J would have been applicable to the shipment, and the freight charges computed pursuant thereto would have been in the same amount as the defendant has computed for the representative shipment that actually moved in a 52-foot car. The shipment could have been loaded in two 40-foot cars instead of in one 52-foot car.
18. Plaintiff presented the testimony of an expert witness who concluded that the Class 4 rating provided in item 2885 of Consolidated Freight Classification No. 16 is applicable to the shipments in issue because:
(a) item 2250 of Exceptions Tariff No. 90-J provides class ratings for cars “in excess of 40 feet 7 inches but not exceeding 50 feet 6 inches in length”, but makes no provision for longer cars of the sizes that transported the shipments in dispute;
(b) since the cars actually used for the shipments are longer than the maximum length provided in item 2250 of the exceptions tariff, the only other tariff to which one may resort to obtain a class rating applicable to the shipments is item 2885 of Consolidated Freight Classification No. 16 and Rule 34; and
(c) the function of an exceptions tariff, such as Tariff 90-J, is to remove an item from the application of the Consolidated Freight Classification insofar as it affects the classification. For the shipments in issue, the ratings set forth in the Consolidated Freight Classification are eliminated only to the extent of the minimum weights and the sizes of the cars provided for in the exceptions tariff. Otherwise, the class rating provided in the Consolidated Freight Classification remains in effect.
*17 19. Defendant also presented the testimony of an expert witness who was of the opinion that the rating in item 2250 of Exceptions Tariff No. 90-J (and similar items of exceptions tariffs identical to Tariff 90-J in all material respects) was applicable to the shipments because:
(a) the purpose of an exceptions tariff is to remove the rating from the classification with respect to the commodity involved; therefore, Exceptions Tariff No. 90-J entirely removed from the classification the rating on freight automobile bodies;
(b) item 2250 of Exceptions Tariff 90-J contains an express prohibition against resorting to the Consolidated Freight Classification for either the classification rating or for the minimum weight, because the exceptions tariff provides that Rule 34 of the classification will not apply; and
(c) where Rule 34 is made inapplicable to an exceptions tariff, the rulings of the Interstate Commerce Commission require the application of the rating in the exceptions tariff to shipments in cars larger than the sizes specified in that tariff.
20. The parties have agreed that if it is held that Consolidated Freight Classification No. 16 applies to the bills listed in finding 1, plaintiff would be due the sum of $1,453.51 with respect to docket number 579-52, and $2,271.50 with respect to docket number 149-59. The parties have also agreed that if it is held that item 2250 in Exceptions Tariff 90-J is applicable to the bills listed in finding 1, there is due plaintiff the sum of $125.07 with respect to docket number 579-52 and $36.56 with respect to docket number 149-59.
21. As stated in finding 1, the carrier’s bills covered by the foregoing findings are only a portion of the claims included in plaintiff’s petitions. At a pretrial conference, the parties agreed that the remaining bills fall in three categories and are to be disposed of as follows:
(a) Category No. 1 covers a group of bills which involve the same issue as was decided in Atlantic Coast Line Railroad v. United States, 136 Ct. Cl. 1, and the net amount due plaintiff on such bills in docket number 579-52 is the sum of *18 $1,048.27, and in docket number 149-59 is the sum of $8,371.30. Judgment for these amounts is to be entered for plaintiff when the other issues involved in the petitions have been disposed of to the extent that judgment can be entered on all of plaintiff’s claims;
(b) Category No. 2 covers a group of bills which present the same issue as is involved in Boston and Maine Railway Co. v. United States, No. 186-52, which has been referred to the Interstate Commerce Commission for determination, and the parties have agreed that such bills are to be disposed of on the basis of the final judgment rendered in that case;
(c) Category No. 3 covers a group of bills which present the same issue as is involved in Chesapealse & Ohio Railway Co. v. United States, No. 308-54, which has also been referred to the Interstate Commerce Commission for its determination, and the parties have agreed that such bills are to be disposed of on the basis of the final judgment in that case.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover from the United States the sum of one thousand, four hundred fifty-three dollars and fifty-one cents ($1,453.51) in case number 579-52, and the sum of two thousand, two hundred seventy-one dollars and fifty cents ($2,271.50) in case number 149-59. However, entry of judgments will be suspended pending the determination of the remaining issues in this case.